<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| |
|---|
| HOWARD GRADEN, Individually and On Behalf of All Others Similarly Situated, |
| Plaintiff, |
| v. |
| CONEXANT SYSTEMS, INC., DWIGHT W. DECKER, ARMANDO GEDAY, MICHAEL VISHNY, BALAKRISHNAN S. IYER, ROBERT McMULLAN, DENNIS E. O'REILLY, J. SCOTT BLOUIN, and KERRY K. PETRY., |
| Defendants. |

Hon. Stanley R. Chesler
Civ. No. 05-0695

OPINION

<u>**CHESLER**</u>, <u>**District Judge**</u>

THIS MATTER comes before the Court on Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 8(a) and 9(b). As will be discussed below, the Court concludes that Plaintiff lacks standing to sue under the provisions of the Employee Retirement Savings Act of 1979 ("ERISA") and, therefore, **GRANTS** Defendants' Motion to Dismiss.

I. BACKGROUND

Plaintiff is a former participant in the Conexant Retirement Savings Plan (the "Plan") who directed some of his investments into Conexant stock. His central allegation is that Defendants violated their fiduciary duty to Plan participants by continuing to allow Conexant

1

stock to be offered as an investment option to participants in the defined contribution plan and encouraging Plan participants to invest in Conexant stock, despite the stock's precipitous decline following Conexant's merger with Globespan Virata, Inc. ("Globespan").

Plaintiff claims that investments in Conexant stock "became imprudent as a result of poor financial and operating performance of the Company." (Am. Compl., ¶ 7(c).) Specifically, the Amended Complaint alleges that Conexant was a poor investment option for the plan because of problems with Conexant's merger with Globespan. (Id. at ¶ 37.) Plaintiff asserts that Defendants made false and misleading statements about the status of the Globespan merger and about the merged company's financial prospects. (Id. at ¶¶ 4-5, 37-62.) The Amended Complaint further alleges that these purported misstatements artificially inflated the price of Conexant stock, which "declined precipitously" when Conexant lowered its financial projections. (Id. at ¶ 5.)

The Amended Complaint contains five counts: Counts I and II assert a breach of fiduciary duty due to the failure to prudently and loyally manage Plan assets; Count III alleges a breach of fiduciary duty due to the failure to provide complete and accurate information to the Plan participants and beneficiaries; Count IV alleges a breach of fiduciary duty due to an alleged failure to monitor other Plan fiduciaries; and Count V alleges a breach of fiduciary duty resulting from transactions that were prohibited under ERISA § 406.

Plaintiff seeks to represent a class of participants in or beneficiaries of the Plan from March 1, 2004 through the present (the "putative class period"). (Am. Compl. ¶¶ 2, 15, 76.) Plaintiff was a Conexant employee until September 3, 2002. (Rosen Decl., Ex. A (Graden

Employment Record).)[1]  Plaintiff liquidated the balance of his Plan account in October 2004, four months before filing the original complaint in this action and ten months before filing the Amended Complaint.  (Am. Compl., ¶ 15; Rosen Decl., Ex. B (Graden 401(k) Plan Statement for October 2004).)  The Amended Complaint is brought against Conexant, the Plan sponsor, and various Conexant officers and directors who are alleged to be fiduciaries of the Plan under ERISA.

As mentioned earlier, the Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).  (Am. Compl., ¶ 25.)  The Plan provides for individual accounts for each Participant, and benefits are payable based on the amounts contributed to these accounts, adjusted for any investment gains or losses. (Id.) Participants contribute a certain percentage of their salary to the Plan on a pre-tax basis.  These amounts are invested among the Participant's choice of investment options available under the Plan. (Id. at ¶¶ 26-27.)  Among the investment options provided by the Plan is a fund consisting solely of Conexant stock.

All of Plaintiffs' breach of fiduciary duty claims revolve around Defendants' alleged action and inaction with regard to the Conexant stock in the plan.  Defendants, in their motion to dismiss, contend that the allegations in Plaintiffs' Amended Complaint fail to assert a viable claim for any breach of fiduciary duty by any defendant.  The Court concludes that none of these

---

[1] In evaluating a motion to dismiss under rule 12(b)(6), a court may consider any document, such as Graden's employment record, that is "integral to or explicitly relied upon in the complaint" as well as any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if plaintiff's claims are based on the document."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted); see also DiFelice v. Aetna U.S. Healthcare, 346 F.3d 442 (3d Cir. 2003).

issues need be reached because Plaintiff is not a plan participant under ERISA and, therefore, does not have standing to sue for a breach of fiduciary duties under ERISA § 502(a).

## II.  DISCUSSION

To have standing to sue under ERISA § 502(a), a plaintiff must be "a participant, beneficiary, or fiduciary" of a plan.  29 U.S.C. § 1132(a).  A "participant" is defined by ERISA as "an employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employ."  29 U.S.C. § 1002(7).  "In order to establish that he or she [is eligible or] 'may become elegible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-18 (1989).

Defendants move to dismiss Plaintiff's claims on the ground that he is no longer an employee or Plan participant and, therefore, is not a "participant" under ERISA, 29 U.S.C. § 1002(7).  Accordingly, Defendants assert that Plaintiff lacks standing to bring breach of fiduciary duty claims on behalf of the Plan under ERISA, 29 U.S.C. § 1132(a)(2).

The standing of the Plaintiff to bring suit on behalf of the Plan for "appropriate relief" under ERISA hinges on the question of whether he is a  "participant" under ERISA.  29 U.S.C. § 1002(7).  "The requirement that a claimant be a 'participant' is a subject matter jurisdiction requirement as well as a standing issue."  Katzoff v. Eastern Wire Products Co., 808 F.Supp. 96, 98 (D.R.I. 1992) (citations omitted).  A party is a "participant" under ERISA if he has "either a colorable claim to vested benefits in the Plan or a reasonable expectation of returning to employment at [his former employer where he would again be covered by the Plan]." Shawley v.

4

Bethlehem Steel Corp., 989 F.2d 652, 655-56 (3d Cir. 1993) (citing Sladek v. Bell System Management Pension Plan, 880 F.2d 972, 979 (7th Cir. 1989)).

Plaintiff makes no claim that he has any reasonable expectations of returning to Conexant as an employee. His argument is that he has a "colorable claim to vested benefits" that entitle him to standing. In essence, Plaintiff asserts that he has not received all the benefits to which he is entitled, and is seeking a recovery to the Plan of the losses caused by the alleged breaches of fiduciary duty. See Mass. Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985) (holding that recovery for ERISA breaches inure to the benefit of the Plan as a whole). These benefits would be paid first to the Plan and then distributed to the Plaintiff class as benefits through their Plan accounts.

The problem with the Plaintiff's claim is that, since he has no reasonable expectation of returning to work as an employee, he must have a "colorable claim to *vested* benefits" to have standing to proceed with his case. Shawley, 989 F.2d at 655-56 (emphasis added). As will be discussed below, what he is seeking is not, however, a "vested benefit" under ERISA.

The Third Circuit has definitively held that "damages stemming from [an] alleged breach of fiduciary duty does not constitute a "benefit" within the meaning of [29 U.S.C.] § 1002(8)." Daniels v. Thomas and Betts Corp., 263 F.3d 66, 77 (3d. Cir. 2001) (citing Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir. 1986). This Court has reached a similar conclusion under facts which are close to those presented in this case. See In re RCN Litigation, 2006 WL 753149, *14 (D.N.J. Mar. 21, 2006); McFarland v. Yegan Holdings Corp., 1989 U.S. Dist. Lexis 16965, *9-11 (D.N.J. Oct. 6, 1989).

Thus, the key question is whether Plaintiff has a colorable claim to vested benefits or is

5

merely seeking damages.  A good deal of light on this issue is shed by the Complaint itself.  It indicates that Plaintiff seeks to have Defendants make good on all losses "including lost return on investments that would have resulted from prudent and loyal investment of the Plan's assets," and require Defendants to restore "the full value of all contributions used to make such investments, plus the return that would have been obtained had the assets been prudently invested in the best performing alternative investment in the Plan." (Am. Compl. p 51, ¶¶ 3, 5.)

As the Fifth Circuit in Sommers Drug Store Co. Employee Profit Sharing Trust v. Corrigan, 883 F.2d 345 (5th Cir. 1989) noted:

> The distinction between "benefits" and "damages" is not clear.  This is in part attributable to use of words with overlapping meaning to describe mutually exclusive categories.  The statute simply grants rights of recovery only to a distinct and limited type of claim which itself is no more than a suit for damages, albeit personally suffered because participants should have been paid under the plan but were not.  Clearly, a plaintiff alleging that his benefits were wrongly computed has a claim for vested benefits.  Payment of the sum sought by such a plaintiff will not increase payments due him.  On the other hand, a plaintiff who seeks the recovery for the trust of an unascertainable amount, with no demonstration that the recovery will directly effect payment to him, would state a claim for damages, not benefits.

Id. at 349-350.

In Sommers, the court concluded that where plaintiffs claimed that defendant fiduciaries had redeemed their shares of stock in an ESOP at less than fair market value, plaintiffs had a claim for vested benefits – because they were essentially suing for benefits that were wrongfully withheld.  In Hargrave v TXU Corp., 392 F. Supp. 2d 785 (N.D. Tex. 2005), the court relied on Sommers analysis to conclude that breach of fiduciary duty claims, virtually identical to those asserted here, constituted damages claims.  In reaching this holding, the Hargrave Court conducted the following analysis:

6

> Plaintiffs' claims in this case are readily distinguishable from the claims made in Sommers. In Sommers, the plaintiffs argued that the full market value of the plan assets was greater than the amount they received when the assets were distributed. Sommers, 883 F.2d at 350. Stated another way, the total value of the plan assets was a certain amount that was calculable, and the plaintiffs argued that they did not receive that full calculable value because the defendants held back some of the proceeds for themselves. The Sommers plaintiffs sued to recover the rest of the benefits that were wrongfully withheld. See Id. Thus, the Fifth Circuit concluded that the plaintiffs' claims were in fact for vested benefits rather than for damages. Id.
>
> The named Plaintiffs in this case, by way of contrast, do not allege that the Defendants held back a portion of the benefits of the plan. Rather, they argue that the amount in the entire plan was too small. Specifically, Plaintiffs allege that Defendants' investment in TXU stock resulted in an overall diminution of plan assets, which were then distributed to the Plaintiffs. The allegation is not that benefits were withheld, but that there should have been more benefits to go around. This argument states a claim for "a sum that possibly could have been earned" if Defendants had made prudent investment decisions with respect to plan assets. See Yancy, 768 F.2d at 709. The named Plaintiffs have already received all the benefits that accrued under their Thrift Plan accounts. They are now seeking additional damages that *might have* accrued but for Defendants' alleged misconduct. See Id. These additional damages are speculative and cannot be considered as vested under ERISA. See Id.
>
> Unlike Sommers, the named Plaintiffs' argument does not resemble an allegation that benefits were simply miscalculated and cannot be construed as a claim for vested benefits. On the contrary, Plaintiffs are demanding that Defendants make good to the Thrift Plan for the *losses sustained* as a result of the investments in TXU stock. This argument most closely resembles a claim for damages to the plan.

Id. at 789-90 (emphasis in original).

This Court believes that the Hargrave Court's analysis is correct and applies to this case. As much as one might wish to engage in semantic gymnastics, there is simply no way to conclude that a claim which seeks reimbursement for the "lost return on investments that would have resulted from prudent and loyal investment of plan assets" is one for vested benefits. Nor is

there any way to conclude that a claim for "the return that would have been obtained had the assets been prudently invested in the best performing alternative investment in the plan" is anything other than a claim for damages.  Such allegations seek to claim a sum that could possibly be earned if the Defendants did not commit the alleged breaches of fiduciary duty.  Additional damages that might have accrued, however, are "speculative and cannot be considered as vested under ERISA."  Hargrave, 392 F. Supp. 2d at 790; accord Lalonde v. Textron, Inc., 2006 WL 519671, *5 (D.R.I. March 1, 2006).

The difference between what the Plaintiff's account *might have* earned and what it actually earned is not a benefit that is promised for, or promised under, the terms of the Plan.  The remedy being sought here is not the payment of a vested benefit, but rather a monetary damage amount for an alleged breach of fiduciary duty.  See Sommers, 883 F.2d at 350.  The Plaintiff received all the benefits due to him when he left Conexant's employment and withdrew from the Plan.  "At that point, without the reasonable expectation of returning to [Conexant] as [an] employee[], and absent a colorable claim to vested benefits, [he] ceased to be [a] participant[] under ERISA."  Lalonde, 2006 WL 519671 at *5.

The Court recognizes that there are serious and substantial policy arguments which can be made in favor of granting plaintiff standing in a case such as this.  See, e.g., Rankin v. Rots, 220 FRD 511 (E.D. Mich. 2004),  and In Re Mut. Funds Inv. Litig., 403 F. Supp. 2d 434 (D. Md. 2005).  The primary argument presented in these opinions is that to find that such former participants lack standing "would permit [defendants] to exclude potential class members by simply paying them their vested benefits.  ERISA should not be interpreted to circumvent a plaintiffs' recovery in this way."  In Re Mut. Funds, 403 F. Supp. 2d at 442 (quoting Rankin, 220

FRD at 514).

The problem with this approach is that it renders the statutory standing provision a nullity. In effect these courts conclude that, because interpreting the statute as written would deny plaintiffs a remedy, the statute, and its definitive interpretation by the Supreme Court in Firestone Tire & Rubber, should be either ignored, or that suits which clearly seek damages should be transformed by judicial legerdemain into suits for "vested benefits." This Court is satisfied that neither is a proper role for this Court[2].

Plaintiff also cites to the recent Third Circuit decision In re Schering-Plough Corporation ERISA Litigation, 420 F.3d 231 (3d Cir. 2005) to support his claim that former Plan participants have standing to pursue ERISA claims against the Plan's fiduciaries for imprudently managing the Plan's assets. The holding in Schering, however, is not at issue in the current case. It is well established that any claim for breach of fiduciary duty under ERISA must seek relief for the plan as a whole, rather than for individual plan participants. See Byrd v. Reliance Standard Life Ins. Co., 160 Fed. Appx. 209, n4 (3d Cir. 2005) (on ERISA claims for breach of fiduciary duty,

---

[2]The Court notes that a number of cases have:

> developed an exception to the general rule that a person who terminates his right to belong to a plan cannot be a "participant" in the plan. Specifically, if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach,

Swinney v. Gen. Motors Corp, 46 F.3d 512, 519 (6th Cir. 1995). Since no such assertion has been made in this case, the Court need not decide whether or not this exception is indeed warranted. See Adamson v. Armco Inc., 44 F.3d 650, 655 (8th Cir. 1995) (exception only applies when fiduciary's breach of duty deprives plaintiff of participant status – not where loss of status results from plaintiff's own actions).

"relief is available to the plan, not to individual plan participants") (citing McMahon v. McDowell, 794 F.2d 100, 109 (3d Cir.1986); Alexander v. Whitman, 114 F.3d 1392, 1397 (3d Cir.1997); Hein v. Fed. Deposit Ins. Corp., 88 F.3d 210, 223 (3d Cir.1996); Ream v. Frey, 107 F.3d 147, 151 (3d Cir.1997); Haberern v. Kaupp Vascular Surgeons, Ltd. Defined Benefit Pension Plan, 24 F.3d 1491, 1501 (3d Cir.1994)); In re RCN Litigation, 2006 WL 753149 at *13-14; Compton Press, Inc. Employees' Profit Sharing Retirement Plan v. Granada Investments, Inc., 1992 WL 566329, *9 (D.N.J. Nov. 23, 1992) (holding that a "suit against a benefit plan fiduciary for breach of fiduciary duties may only be brought for the benefit of the plan") (citations omitted).)  Under Schering, the fact that a given plan is segregated into individual participant accounts does not mean that a loss to a particular account (or group of accounts) is not also a loss to the Plan as a whole.  Schering, 420 F.3d at 237.  Accordingly, the Schering Court overturned a district court's holding that prevented plaintiffs from pursuing a derivative action on behalf of an employees' savings plan on the grounds that the plaintiffs were seeking compensation for losses inflicted on only a subset of the plan's accounts and that the plaintiffs were seeking an allocation of damages among individual plan participants' accounts in proportion to the accounts' losses.  Id. at 234.  The Schering Court held that "the fact that damages paid to [a] Savings Plan for breaches of fiduciary duties will also indirectly benefit its participants does not bar a derivative action under §§ 1109 and 132(a)(2)."  Id. at 241 (citing Smith v. Sydnor, 184 F.3d 356, 363 (4th Cir. 1999).

     Schering holds that participants may seek damages on behalf of the Plan for alleged breaches of fiduciary duty that had an adverse financial impact to only a subset of the Plan's accounts (namely, those with investments in Conexant securities).  It also holds that participants

may seek damages on behalf of the Plan which may be appropriately allocated to individual Plan participants' accounts.  Both of these issues are precluded by the Schering decision.  The issue of whether a former employee has standing, under the requirements of Shawley to bring suit on behalf of RCN's savings plan, however, was not addressed by the Schering Court.

### III.  CONCLUSION

In short, this Court agrees with the Lalonde Court "that the distinction between damages and vested benefits is real and the concepts must not be conflated in order to expand participant standing beyond what Congress provided in § 1002(7).  2006 WL 51967, at *5.  For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss.  An appropriate form of order will follow.

                                                       s/ Stanley R. Chesler
                                                    Stanley R. Chesler, U.S.D.J.