<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HOWARD GRADEN, Individually and On Behalf of All Others Similarly Situated, | : | Civil Action No. 05-695 (SRC) |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| CONEXANT SYSTEMS, INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

<u>**CHESLER**</u>, District Judge

  This matter comes before the Court on a renewed motion to dismiss filed by Defendants

Conexant Systems, Inc. ("Conexant") Dwight W. Decker, Armando Geday, Michael Vishny,

Balakrishnan S. Iyer, Robert McMullan, Dennis E. O'Reilly and J. Scott Blouin (hereinafter,

collectively "Defendants"). This putative class action, brought pursuant to Section 502 of the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, arises out of

investment in Conexant's Retirement Savings Plan (the "Plan") during the period between March

1, 2004 and the present (the "Class Period"). Plaintiff Howard Graden, a former Conexant

employee who cashed out his Plan account prior to filing this lawsuit, claims that he and the

Class of Plan participants sustained losses as a result of the Plan's imprudent investment in

Conexant stock during the Class Period.  Defendants are Conexant, the Plan sponsor,[1] and

various alleged individuals alleged to be fiduciaries of the Plan.

The Court had granted Defendants' previous motion to dismiss on the basis that Plaintiff,

as a former participant in the Plan, lacked standing to pursue the stated claims for benefits lost as

a result of Defendants' conduct.  Thus, the Court did not reach Defendants' argument on the

merits of the claims.  Plaintiff appealed.  The Third Circuit reversed this Court's ruling, holding

that Plaintiff does have standing, and remanded the matter.  On this renewed motion to dismiss,

Defendants ask the Court to dismiss the Amended Class Action Complaint ("Complaint") in its

entirety pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

Plaintiff has opposed the motion.  The Court has considered the papers submitted by the parties.

It rules based on those submissions, and without oral argument, pursuant to Federal Rule of Civil

Procedure 78.  For the reasons that follow, the Court grants the motion to dismiss in part and

denies the motion in part.

## I.   RELEVANT FACTS[2]

Conexant is a publicly-traded company that designs, develops and sells semiconductor

products for use in broadband communication applications. On March 1, 2004 - the date on

which the Class Period commences - Conexant made a public announcement that it had acquired

Globespan Vitrata, Inc. ("Globespan"), a company also engaged in the development of

---

[1] An employer that establishes or maintains an employee benefit plan is a "sponsor" under ERISA. 29 U.S.C. § 1002(16)(B).

[2] The factual synopsis is based on the Complaint and documents on which the Complaint relies.  The Court construes the facts pled in the light most favorable to Plaintiff.

broadband system products.  The March 1, 2004 press release issued by Conexant touted the merger as a success.  It stated that the "combined company . . .  is addressing market segments that are expected to grow to $10 billion in annual sales over the next several years."  (Compl. ¶ 43.)  It further stated that Conexant had "made outstanding progress toward integrating the organizations" and that it was "completely confident that the merged company will deliver stronger financial performance and will create more value for our shareholders, customers and employees than either Conexant or Globespan Virata could have operating independently." (Id.)

The Complaint, however, alleges that the Globespan acquisition was quite problematic.  It avers that Conexant was not experiencing an increase in revenue but instead was experiencing an increase in expenses, significant problems with the integration process and loss of market share due to delays in designing and releasing new products.  Plaintiff charges that Conexant withheld this information and continued to promote the merger as a success.  He also charges that two of the individual defendants, Decker and Geday, knowingly caused Conexant to stuff distribution channels with product exceeding demand, in an effort to conceal Conexant's problems.

The troubled merger began to come to light on July 6, 2004, when Conexant issued an earnings warning that revenues for the third quarter of that year were expected to be $40 million less than expected due to a shortfall in demand for Conexant products.  According to the Complaint, the price of Conexant stock "plummeted $1.77 per share from its previous closing price of $4.08 per share, on July 2, 2004, to close at $2.31 per share, on July 6, 2004."  (Compl., ¶ 48.)  A November 4, 2004 revelation announcing losses of $367.5 million due to lower

demand, inventory build-up and delayed product release resulted in a further drop in Conexant

stock price. By November 10, 2004, the failure of the merger was acknowledged. The

Complaint alleges that company CEO Decker admitted that "not everything has gone as well as

we'd like" (id., ¶ 55) and that a leading securities analyst stated that "for all practical purposes,

the integration . . . was attempted but not effective." (Id., ¶ 56.)

According to the Complaint, Defendants' imprudent investment decisions and

misrepresentations and/or non-disclosures with regard to information bearing on the risk of

investing in Conexant stock caused Plan participants who selected Conexant stock as an

investment option, such as Plaintiff, to sustain losses that could have been avoided had

Defendants fulfilled their fiduciary duty to the Plan. The Plan is a "defined contribution" or

"individual account" plan within the meaning of Section 3(34) of ERISA. 29 U.S.C. § 1002(34).

It provides for individual accounts for each participant, with benefits based upon the amount

contributed by the participant to his or her account, adjusted for investment gains and losses and

expenses. Id. A participant contributes a portion of his or her pre-tax salary to the Plan and

directs the Plan to purchase investments from among the investment options available in the Plan

and allocate those investments to the participant's individual account. (The Plan qualifies as

what is commonly known as a "401(k) plan.")

The Plan provides for a number of options to which Plan participants can direct their

contributions for investment. The Plan in effect from November 1, 2001 until June 4, 2004

contained a list of investment options that were required to be made available; these options

included Conexant Stock Fund B, which consists of Conexant common stock. The relevant

provision stated:

> The Trustee *will establish and maintain* as parts of the Trust Fund individual Investment Funds (which may be mutual funds or collective funds, accounts or other similar investment vehicles), *each of which will consist of and be identical to* the individual Plan Investment Funds described in Appendix B . . .

(Conexant Systems, Inc. Retirement Savings Plan dated November 1, 2001, § 8.020: attached to Boulanger Decl. as Ex. D. (emphasis added).)  Appendix B, the list of mandated investment options, included Conexant Stock Fund B.  The Plan was amended on June 4, 2004.  In relevant part, the provision quoted above was amended to eliminate language that mandated offering Conexant Stock Fund B as an investment option.  The amended provision gave the Plan Committee the authority to determine which Investment Funds to make available.[3]  The Plan designates the Plan Committee and the Plan Administrator as named fiduciaries.  The Plan documents also address risk.  They caution that investing carries risk of loss and highlight the risks of investing in Conexant stock.

The Complaint charges that Defendants, knowing of Conexant's precarious financial situation should have taken steps to protect the Plan and its participants from losses incurred as a result of the Plan's investment in Conexant stock.  Pursuant to 29 U.S.C. § 1132(a)(2),[4] Plaintiff asserts four causes of action based on Defendants' alleged breach of fiduciary duty: breach of the duty of prudence, in violation of 29 U.S.C. § 1104(a)(1)(A)-(D), by investing in Conexant stock

---

[3] In their briefing the parties have referred to the Plan in effect until June 4, 2004 as the "Former Plan" and the Plan in effect following the June 4, 2004 amendment as the "Amended Plan."  The Court will do the same.

[4] Under this provision, ERISA authorizes plan participants or beneficiaries to bring a civil action "for appropriate relief under section 1109 of this title."  29 U.S.C. § 1132(a)(2).  Section 1109 imposes personal liability upon plan fiduciaries "for any losses to the plan resulting from" their breach of fiduciary duty.  29 U.S.C. § 1109(a).

(Counts I and II); a non-disclosure and misrepresentation claim (Count III); breach of the duty to monitor Plan fiduciaries (Count IV); and breach of fiduciary duty for engaging in prohibited transactions as defined by 29 U.S.C. § 1106(a) (Count V). (The parties' briefs do not address the claim pled in Count V.) The Complaint also asserts liability for these violations based on the theory of co-fiduciary liability. The Complaint alleges that all Defendants named were Plan fiduciaries, as defined by ERISA, in that they "had discretionary authority with respect to the management of the Plan and/or the management or disposition of the Plan's assets, and had discretionary authority or responsibility for the administration of the Plan." (Compl., ¶ 67.) The Defendants named are Conexant and the following individuals: Dwight W. Decker, Chairman and Chief Executive Officer at all relevant times; Armando Geday, Chief Executive Officer and a Director until his resignation on November 9, 2004; Robert McMullan, Senior Vice President, Chief Financial Officer and a member of the Conexant Employee Benefit Plan Committee ("Plan Committee") until his resignation on August 12, 2004; Michael Vishny, Senior Vice President of Human Resources and Plan Administrator; Bradley W. Yates; Balakrishnan S. Iyer; Dennis E. O'Reilly; J. Scott Blouin and Kerry Petry.[5] The Complaint alleges that Yates, Iyer, O'Reilly, Blouin and Petry were all members of the Plan Committee.

_____

[5] Yates and Petry are no longer Defendants to this action. The claims against them were dismissed without prejudice pursuant to stipulations entered into by the parties based on representations by Defendants' counsel that Yates and Petry were not Plan fiduciaries during the Class Period.

## II.   DISCUSSION

### A.      Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)). In Bell Atlantic v. Twombly, an antitrust case alleging conspiracy in violation of the Sherman Act, the Supreme Court addressed the standard for evaluating the legal sufficiency of a pleading attacked on a Rule 12(b)(6) motion. It held that while a complaint need not contain "detailed factual allegations," it must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1964.[6] Federal Rule of Civil Procedure 8, which sets forth a notice pleading standard, requires that "something beyond the mere possibility of loss causation" be alleged. Id. at 1966 (citing Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

---

[6] In contrast, the standard articulated in Conley was that the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. The Supreme Court abrogated the Conley "no set of facts" standard in Bell Atlantic. Bell Atlantic Corp., 127 S.Ct. at 1969.

7

The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

### B.    Imprudent Investment Claim (Counts I and II)

ERISA Section 404 imposes a "prudent man"standard of care on a fiduciary's obligations with respect to an employee benefits plan governed by the statute.  29 U.S.C. § 1104(a)(1).  It provides as follows:

> A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
> > (A) for the exclusive purpose of:
> >
> > > (i) providing benefits to participants and their beneficiaries; and
> > >
> > > (ii) defraying reasonable expenses of administering the plan;
> >
> > (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> >
> > (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly imprudent not to do so; and
> >
> > (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

29 U.S.C. § 1104(a)(1).  Plaintiff alleges that by continuing to offer Conexant stock as an

investment option and/or failing to divest the Plan of Conexant stock, the Plan fiduciaries breached their duty of prudence.

The Third Circuit's decision in Edgar v. Avaya, Inc., 503 F.3d 340 (3d Cir. 2007), controls this Court's analysis of the viability of Plaintiff's imprudent investment claim.  The Edgar court held that the standards of review articulated by the Court of Appeals in Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995), cert. denied, 516 U.S. 1115 (1996), apply to imprudent investment claims in which the underlying benefits plan is categorized by ERISA as an Eligible Individual Account Plan ("EIAP"), such as the subject Conexant Plan.  In Moench, the Third Circuit acknowledged that ERISA plans varied with regard to the discretion given to plan fiduciaries vis-a-vis investment decisions, making a one-size-fits-all standard of review of fiduciaries' conduct inappropriate.  Moench, 62 F.3d at 571.  The distinctions identified by the Moench court broke down as follows: Where the plan *requires* investment in a particular stock, the fiduciary's conduct is not subject to judicial review.  Id.  On the other end of the spectrum, where the plan *merely permits* investment in a particular stock, the fiduciary's investment decision is subject to de novo review.  Id.  In between those two exists a third category of plan, in which the fiduciary is "not absolutely required to invest in employer securities," but is "more than simply permitted to make such investments."  Id.  In that situation, the Moench court determined, a presumption of prudence should be ascribed to the fiduciary's decision, and his or her conduct reviewed for abuse of discretion.  Id.  Moench articulated the intermediate standard with reference to the at-issue employee stock ownership plan ("ESOP").  It held that

> an ESOP fiduciary who invests the assets in employer stock is entitled to a
> presumption that it acted consistently with ERISA by virtue of that
> decision.  However, the plaintiff may overcome that presumption by

> establishing that the fiduciary abused its discretion by investing in
> employer securities.

Id.

The Edgar court, addressing imprudent investment claims involving three Avaya pension benefit plans fitting within ERISA's definition of an EIAP, held that the Moench standard applied to all EIAPs, not just to ESOPs.  Edgar, 503 F.3d at 347.  It reasoned that an ESOP is one of several types of pension plans categorized as EIAPs, as defined by 29 U.S.C. § 1107(d)(3)(A), and that the same, sometimes competing considerations of fiduciary responsibility and encouraging investment in employer securities that informed the development of the Moench standard were implicated in EIAPs generally.  Id.  Applying the abuse of discretion standard, the Edgar court found that the allegations of the plaintiff's complaint, even assuming their truth, could not rebut the presumption of prudence and affirmed the district court's Rule 12(b)(6) dismissal of the prudence claim.  Id. at 348-49.  It noted that the presumption could be rebutted if, as was the case in Moench, a plaintiff alleged that a "precipitous decline in the price of [the employer's] stock," together with the defendants' knowledge of the stock's "impending collapse" and the defendants' "own conflicted status" created the type of "dire situation" in which the defendants should have disobeyed the plan's direction to make employer stock an investment option or divested the plan of company stock in order to fulfill their fiduciary obligation to the plan and its participants.  Id. at 348.  In the Edgar court's assessment, the allegations of the complaint regarding a troubled and financially disappointing corporate acquisition by Avaya, drastic downturns in sales of company products and demand therefor, and a corresponding drop in stock price did not rebut the presumption of prudence to which the Avaya plans' fiduciaries

10

were entitled.  Id.

   This case presents a situation in which two different standards of review must be applied to evaluate the sufficiency of Plaintiff's imprudent investment claims.  The Former Plan, similar to the Avaya pension plans at issue in Edgar, required that employer stock be made available as an investment option. The Amended Plan permitted such an option but did not require it.  Thus, to the extent Plaintiff's claims of breach of fiduciary duty for imprudent investment pertain to Defendants' investment decisions made under the Former Plan, that is those made between the beginning of the Class Period (March 1, 2004) and the date the plan was amended (June 4, 2004), the presumption of prudence applies and the claims must be dismissed.  The allegations of the Complaint regarding that time period paint a picture of Conexant as a company faring no worse than Avaya as it dealt with integration problems associated with corporate acquisitions.  The Complaint alleges that the integration of Conexant and the acquired Globespan did not proceed as smoothly as expected and in fact posed a burden to Conexant.  During this time period, however, the Complaint does not allege any quantifiable financial detriment to Conexant, let alone the dire circumstances that Avaya held might warrant deviating from express Plan instructions to offer Conexant common stock as an option to Plan participants.  Moreover, even if a stock price drop for this time period had been alleged, Edgar teaches that this alone, without a corresponding allegation that the fiduciaries knew that Conexant was about to collapse, would be insufficient to rebut the presumption of prudence and state a viable imprudent investment claim.  Plaintiff's allegation that Defendants Decker and Geday tried to conceal problems with Conexant's business by stuffing distribution channels does not salvage the claim insofar as the

Former Plan is concerned.  <u>Edgar</u>, 503 F.3d at 349 n.13 ("we believe that the bare allegations of fraud and other wrongdoing set forth in Edgar's amended complaint are insufficient to establish an abuse of discretion").  None of these allegations, alone or together, could establish that Defendants abused their discretion by continuing to make investing in Conexant stock an option for Plan participants as directed by the Plan itself.

In contrast, the Defendants' investment decisions under the Amended Plan do not benefit from the presumption of prudence.  Under <u>Edgar</u> and <u>Moench</u>, these decisions are subject to de novo review.  Thus, the Court must look to the statutory language of the prudent man standard to determine whether a cognizable claim for breach of fiduciary duty has been pled.  The wrongdoing alleged in the Complaint adequately pleads a claim that the obligations of prudence and care to the Plan and its participants, as set forth in Section 504 of ERISA, were not fulfilled. As discussed above, the Complaint alleges that the fiduciaries knew or should have known of Conexant's business troubles, including a difficult integration process following the Globespan acquisition, diminished demand for product, lower revenues than expected and at least two significant drops in the price of Conexant stock during the Class Period, yet they failed to take steps to protect the Plan and its participants and minimize losses by, among other things, ceasing to offer the Conexant Stock Fund as an investment option under the Plan.  Accordingly, to the extent the breach of fiduciary duty for imprudent investment claims relate to Defendants' investment decisions under the Amended Plan, the claims will be permitted to proceed past Defendants' Rule 12(b)(6) motion.

Thus, the imprudent investment claims of Counts I and II are dismissed insofar as they related to investment decisions made under Former Plan.  As to the remainder of Counts I and II, the motion to dismiss will be denied.

### C.        Non-Disclosure Claim (Count III)

Section 404's duties of loyalty and prudence require an ERISA fiduciary to inform plan participants of facts material to his or her investments.  In re Unisys Sav. Plan Litig., 74 F.3d 420, 440 (3d Cir. 1996).  The fiduciary must not make material misrepresentations, or withhold material information, "regarding the risks attendant to a fund investment."  Id. at 442.  "In the investment context, a misrepresentation is 'material' if there was a substantial likelihood that it would have misled a reasonable participant in making an adequately informed decision about whether to place or maintain monies in a particular fund."  Edgar, 503 F.3d at 350 (quoting Unisys, 74 F.3d at 442) (internal quotations omitted).

The Complaint in this action alleges that Defendants violated their fiduciary duties to the Plan and its participants by misleading them about the progress of the Globespan merger and failing to disclose information about Conexant's financial troubles.  It further alleges that these statements caused Conexant stock to trade at artificially inflated prices.  Plaintiff maintains that had Defendants provided accurate information the Plan participants would have been able to make informed decisions about investing in Conexant stock via the Plan and have been able to minimize or avoid the losses incurred as a result of their continued investment in company stock.

Whether termed a claim for misrepresentation or non-disclosure, the claim fails under Rule 12(b)(6) for failure to plead loss causation.  Dealing with similar allegations, the Third

Circuit, in <u>Edgar</u>, dismissed the plaintiff's claim that his plan fiduciaries should have disclosed adverse information about the company prior to a public release of a quarterly earnings statement announcing that Avaya was unlikely to meet previously forecasted earning goals for the year.  <u>Id.</u> at 350.  On the first trading day following Avaya's quarterly earnings announcement, the price of the company's common stock fell from $10.69 to $8.01 per share.  <u>Id.</u> at 344.  As in <u>Edgar</u>, to the extent Plaintiff's non-disclosure claim is premised on the theory that participants investing in Conexant stock would not have sustained the losses they did had earlier disclosures about Conexant's poorer-than-expected performance been made, the claim fails because, "under the efficient capital markets hypothesis, such a disclosure would have resulted in a swift market adjustment."  <u>Id.</u> at 350 (quoting <u>Edgar v. Avaya, Inc.</u>, No. 05-3598, 2006 WL 1084087, at *9 (D.N.J. Apr. 25, 2006)).  In other words, this Court cannot grant any relief to Plaintiff for the alleged non-disclosure and/or misrepresentation because, due to the almost immediate market internalization of any announcement by Conexant, no loss to Plaintiff could be linked to the alleged wrongdoing.

Indeed, the Complaint alleges that, following both the July 6, 2004 and November 4, 2004 public announcements regarding Conexant's lower-than-expected earnings, the price of Conexant common stock fell immediately. Under <u>Edgar</u>, the non-disclosure claim lacks the essential element of loss.  Defendants would not have been able to sell the Plan's Conexant common stock holdings at the higher pre-disclosure price and therefore would not have been able to avoid or minimize the losses claimed by Plaintiff.  Failing to plead a harm to remedy, the non-disclosure count must be dismissed for failure to plead a claim upon which relief may be granted.

14

To the extent to the claim is premised on various alternate theories of wrongdoing by Defendants, it must likewise be dismissed.  First, any duty not to misinform participants of the risk of investing in the Conexant Common Stock Fund is satisfied by the warnings issued in the Plan documents.  Edgar, 503 F.3d at 350.  Second, a claim that losses could have been avoided had Defendants divested the Plan of Conexant stock based on the non-disclosed adverse information cannot proceed.  As Edgar explains, no such duty can be imposed on fiduciaries because divesting the Plan of employer stock before the earnings announcement, that is, based on non-public information, would have exposed the fiduciaries to liability for insider trading.  Id. Third, Plaintiff's claim that Defendants made affirmative misrepresentations about the success of the Globespan acquisition, which prevented participants from making informed investment decisions with regard to Conexant stock, is based on hindsight.  Edgar, 2006 WL 1084087, at *9 (dismissing claim that defendants misled plan participants, where claim based on allegations that Avaya publicly released information about expected financial performance and success of integration, because no allegation that defendants knew statements false at the time they were made).  That Defendants' optimistic view of the merger was not ultimately borne out does not mean that, at the time the statements were made, Defendants possessed information to the contrary.  Id.  Finally, Plaintiff's assertion in his brief that losses for alleged misrepresentation and non-disclosure may be linked to Defendants' decision to continue offering the Conexant Stock Fund as an investment option despite knowing of the financial adversity facing Conexant amounts to no more than a re-statement of the imprudent investment claim.

Thus, Defendants' motion to dismiss Count III, for breach of fiduciary duty based on alleged misrepresentations and non-disclosures, will be granted.

**D.      Failure to Monitor Claim (Count IV)**

ERISA imposes upon those individuals empowered to appoint and remove plan fiduciaries a fiduciary duty to monitor those fiduciaries. Edgar, 2006 WL 1084087, at *11; see also In re Xerox Corp. ERISA Litig., 483 F.Supp.2d 206, 215 (D.Conn. 2007) ("ERISA law imposes a duty to monitor appointees on fiduciaries with appointment power") (quoting In re Elec. Data Sys. Corp. ERISA Litig., 305 F.Supp.2d 658, 670 (E.D. Tex. 2004)).  "The power to appoint fiduciaries is itself a fiduciary function.  Implicit in this power is the duty to monitor."  In re RCN Litig., No. 04-5068, 2006 WL 753149, at *9 (D.N.J. Mar. 21, 2006) (internal citations omitted); see also 29 C.F.R. § 2509.75-8, D-4 (stating that responsibility of a company's directors for selecting and retaining plan fiduciaries makes directors fiduciaries with respect to those functions); In re Sprint Corp. ERISA Litig., 388 F.Supp.2d 1207, 1231 (D.Kan. 2004) (collecting cases holding that "an appointing fiduciary has ongoing duty to monitor its fiduciary appointees").

While both Plaintiff and Defendants acknowledge that a duty to monitor exists, they disagree over the scope of that duty, and by extension, whether the Complaint adequately states a claim for breach of the duty.  Federal courts have looked to the Department of Labor's interpretive bulletin relating to fiduciary duty under ERISA for instruction on the contours of the duty to monitor.  Sprint Corp., 388 F.Supp.2d at 1231; In re Enron Corp., 284 F.Supp.2d 511, 544 n.48 (S.D.Tex. 2003).  The relevant section of that bulletin states:

> Q: What are the ongoing responsibilities of a fiduciary who has appointed trustees or other fiduciaries with respect to those appointments?
>
> A: At reasonable intervals *the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary* in such manner as may be reasonably expected *to ensure that their performance has been in compliance with the terms of the plan and statutory standards*, and satisfies the needs of the plan.  No single procedure will be appropriate in all cases; the procedure adopted may vary in accordance with the nature of the plan and other facts and circumstances relevant to the choice of the procedure.

29 C.F.R. § 2509.75-8 at FR-17 (emphasis added).

The Complaint avers that Conexant's board of directors exercised their authority to select, monitor, retain and remove members of the Plan Committee.  At least two directors, Decker and Geday, are named as Defendants.  (A third may be Iyer, but that is not exactly clear at this point, as will be discussed below.)  The Complaint alleges that Defendants, including those who were members of Conexant's board of directors, knew about serious troubles faced by the company, many stemming from the Globespan merger, including a downturn in sales of and demand for Conexant's products, and a result "were aware that Conexant was and would continue to be a risky investment option for many reasons."  (Compl., ¶ 37.)  It specifically charges directors Decker and Geday with stuffing distribution channels to conceal Conexant's problems.  (Compl., ¶ 46.)  These allegations, together with the pointed allegations that the director Defendants failed to adequately review the performance of Plan fiduciaries to ensure that they were fulfilling their obligation to invest prudently, as required by ERISA, suffice to state a duty to monitor claim.

In Sprint Corp., the court denied a motion to dismiss the duty to monitor claim, reasoning that complaint's allegations that directors defendants knew about various business failures and took no action to prevent plan fiduciaries from imprudently investing in Sprint stock sufficiently stated a claim.  Sprint Corp., 388 F.Supp.2d at 1232.  The allegations of this case are similar.  The director Defendants are charged with knowledge of a disappointing merger and a failure to assess whether fiduciaries' investment of Plan assets into company stock was prudent.  (Compl., ¶¶ 59-60.)  The Complaint further avers, under the failure to monitor count, that "Defendants knew or should have known that other fiduciaries were imprudently allowing the Plan to continue offering the Conexant Sock Fund and the Company Stock Funds investment options and investing Plan assets in the Conexant Stock Fund when it no longer was prudent to do so, yet failed to take action to protect the participants," (Id., ¶ 110.)  Such action, according to the Complaint, includes removing fiduciaries who were acting imprudently and failing to disclose material information about Conexant's practices and financial condition.  (Id., ¶ 113.)

Defendants' argument that the duty to monitor is not so broad as to go beyond merely appointing and terminating plan fiduciaries is untenable.  The duty to appoint or remove a plan fiduciary would be rendered meaningless if it did not inherently involve an evaluation of the fiduciary's performance vis-a-vis the statutory prudent man standard of care owed by plan fiduciaries to participants.  See In re Westar Energy, Inc., ERISA Litig., No. 03-4032, 2005 WL 2403832, at *24 (D.Kan. Sept. 29, 2005).  Nor can Defendants' argument that the duty to monitor claim is conclusory be countenanced.  As discussed, Plaintiff supplies enough alleged facts in support of his contentions to carry the duty to monitor claim over the 12(b)(6) hurdle.

### E.      Co-Fiduciary Claims

Defendants' liability for the breaches pled in Counts I through IV has also been asserted

under ERISA's theory of co-fiduciary liability.  Unlike primary fiduciary liability, co-fiduciary

liability holds a fiduciary responsible for another's breach of duty in certain statutorily defined

circumstances.  29 U.S.C. § 1105(a).  Those circumstances are as follows:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

Id.

Two categories of breach of fiduciary duty will remain at issue following this motion to

dismiss: imprudent investment and failure to monitor. For the reasons discussed above, the Court

has found that the Complaint adequately pleads breach of fiduciary duty for Defendants' failure

to invest prudently (Counts I and II) and failure to monitor plan fiduciaries (Count IV).  It follows

that these allegations of direct, primary involvement in the alleged wrongdoing suffice to state a

claim for co-fiduciary liability as against all Defendants for imprudent investment.  The direct

involvement by the Plan Committee Defendants in this misconduct supports an inference that

they knowingly participated in each others' breaches. See In re Honeywell Int'l ERISA Litig.,

No. 03-1214, 2004 WL 3245931, at *14 (D.N.J. Sept. 14, 2004) (finding co-fiduciary claim

sufficiently pled because Defendants' knowledge of others' breaches and failure to remedy could

be inferred from allegations that Defendants participated in the alleged breaches).   Similarly, the

director Defendants' alleged failure to exercise their duty to monitor prudently can give rise to an

inference that this fiduciary breach enabled the other fiduciaries to imprudently invest and/or

failed to take efforts to remedy the breach.  Though Defendants argue that Plaintiff's allegations

of knowledge are conclusory, such allegations have been found adequate by courts evaluating co-

fiduciary claims on a Rule 12(b)(6) challenge.  See id.; In re Polaroid ERISA Litig., 362

F.Supp.2d 461, 479 (S.D.N.Y. 2005). Thus, the co-fiduciary claims survive against all

Defendants as to the alleged imprudent investment activity, as alleged in Counts I and II with

respect to the Amended Plan.

     With respect to the breach of fiduciary duty based on a failure to monitor, the two director

Defendants were allegedly directly involved in that breach and thus knowing participation in

each other's breach is sufficiently pled.  It is not clear from the Complaint, however, nor can one

reasonably infer, that the Plan Committee Defendants had knowledge of the director Defendants'

imprudent exercise of their duty to monitor or that they enabled the director Defendants to

commit that breach of fiduciary duty.  The Complaint does not adequately put the non-director

Defendants on notice of what they did to give rise to co-fiduciary liability for the directors'

alleged failure to monitor their performance.  In re McKesson HBOC, Inc. ERISA Litig., No. 00-

30030, 2002 WL 31431588, at *17 (N.D.Cal. Sept. 30, 2002) (dismissing co-fiduciary claim

because it failed to put each defendant on notice of what he or she had done to give rise to

liability).  Thus, as to the director Defendants, the co-fiduciary claims for failure to monitor may proceed.  Insofar as the Complaint asserts a co-fiduciary liability claim against the Plan Committee Defendants based on the director Defendants' alleged breach of duty to monitor, the claim will be dismissed without prejudice.

**F.      Fiduciary Status of Certain Defendants**

Finally, Defendants argue that even if they otherwise stated a cognizable basis for relief, the claims against Defendants Conexant, Decker, Geday and Iyer must be dismissed because they were not fiduciaries, as defined by ERISA.  The threshold question of whether a plaintiff may maintain a breach of fiduciary duty claim against a defendant is whether the defendant is an ERISA fiduciary.  Mulder v. PCS Health Sys., Inc., 216 F.R.D. 307, 313 (D.N.J.2003) (citing In re Unisys Corp. Retiree Med. Benefit ERISA Litig., 57 F.3d 1255, 1265 (3d Cir.1995)).  The Court will address the sufficiency of the allegations as to each of these Defendants fiduciary status.

**1.      Conexant**

Though not explicitly named as a fiduciary by the Plan, Conexant can be found to be a fiduciary by virtue of the functions it performed with respect to the Plan.  See Mertens v. Hewitt Associates, 508 U.S. 248, 262 (1993).  A plan sponsor, such as Conexant, may be a Plan fiduciary "to the extent it retains or exercises any of the responsibilities listed in the [statutory] definition of 'fiduciary.'"  Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1464-65 (4th Cir. 1996).  ERISA defines a plan fiduciary as follows:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises
> any discretionary authority or discretionary control respecting management
> of such plan or exercises any authority or control respecting management
> or disposition of its assets, (ii) he renders investment advice for a fee or
> other compensation, direct or indirect, with respect to any moneys or other
> property of such plan, or has any authority or responsibility to do so, or
> (iii) he has any discretionary authority or discretionary responsibility in the
> administration of such plan.

29 U.S.C. § 1002(21)(A). This Court has noted that, because one can be a fiduciary with respect to certain actions, but not others, whether a "person" is a fiduciary depends on the particular function exercised by the person, and is thus a "highly fact intensive inquiry." Pietrangelo v. NUI Corp., No. 04-3223, 2005 WL 1703200, at *5 (D.N.J. July 20, 2005); see also Lockheed Corp. v. Spink, 517 U.S. 882, 890 (1996) (observing that fiduciary status under ERISA exists when one is fulfilling certain statutorily defined functions).

In this case, Plaintiff alleges that Conexant exercises discretionary authority, through its directors, officers, and the Plan administrator, with respect to the management and administration of the Plan. (Compl., ¶ 18.) He avers that "Conexant had actual and effective control over the activities of its officers and employees, including their Plan-related activities." (Id., ¶ 19.) He states that through the Board of Directors, Conexant had "the authority and discretion to appoint, monitor and remove officers and employees [from] the individual fiduciary roles with respect to the Plan." (Id., ¶ 20.) Further, he alleges that Conexant did not delegate fiduciary responsibilities to an external provider, but rather chose to internalize fiduciary functions. (Id., ¶ 68.) Indeed, the Complaint alleges that Conexant acted as Plan Administrator. (Compl. ¶ 36.)

In Pietrangelo, Judge Garrett E. Brown, of this district, found allegations almost identical

22

to these to be sufficient to withstand a motion to dismiss.  <u>Pietrangelo</u>, 2005 WL 1703200, at *5-6.  It reasoned that because plan documents are not dispositive of fiduciary status, and a company can assume a fiduciary role by virtue of its activities with respect to a plan, even a contradiction between a complaint's allegations and the plan documents do not compel the conclusion that, on a Rule 12(b)(6) motion, the company is not a fiduciary.  <u>Id.</u> at * 6 (holding that "allegations of functional fiduciary status are sufficient to withstand a motion to dismiss in spite of plan documents to the contrary").  Thus, the allegations satisfied the threshold standard for asserting a breach of fiduciary duty claim under ERISA against the plan sponsor.

This Court likewise finds the allegations of the Complaint at bar to be sufficient to state a claim that Conexant acted in some fiduciary capacity with respect to the Plan.  Plaintiff has clearly alleged that Conexant exercised discretionary authority and discretionary control over the administration and management of a Plan, functions which would bring Conexant within ERISA's definition of a fiduciary.  The Court notes that, as with other observations and findings made in this Opinion, its decision that the Complaint meets the threshold pleading requirement with respect to Conexant's status as a Plan fiduciary does not bear on the ultimate merits of any breach of fiduciary duty claim against Conexant.

2.    <u>Decker</u>

The Complaint alleges sufficient facts that permit Plaintiff to prove that Decker was a Plan fiduciary.  It alleges that he were the Chairman of the Board of Directors, and as such, exercised authority to select, monitor, retain and remove members of the Plan Committee.  As

discussed above, this authority carries an implicit fiduciary duty to monitor appointed fiduciaries. Thus, at least with respect to this function, the Complaint adequately states that Decker was a fiduciary. These allegations alone defeat the motion to dismiss as against Decker, and the Court does not comment on whether his fiduciary functions may be proven to be broader, or alternatively, disproven following factual discovery.

        3.     Geday

Geday is also alleged to have sat on the Board of Directors until his resignation on November 9, 2004, and thus for the same reasons as Decker, he is sufficiently alleged to be a Plan fiduciary.

        4.     Iyer

Iyer's role at Conexant during the Class Period is not entirely clear at this point. The Complaint alleges that he was a member of the Plan Committee, but Defendants' moving brief states that the Complaint is wrong. Rather, according to Defendants, Iyer was a director during the Class Period. Plaintiff seems to concede that the Complaint's identification of Iyer is incorrect. ("[I]n their capacities as directors, Defendants Decker, Geday and Iyer as liable as Plan fiduciaries through their exercise of authority and discretion to appoint, monitor and remove other Plan fiduciaries." (Br. at 17-18.).) Either way, for the reasons discussed above, the Complaint adequately pleads that Iyer was a fiduciary. The extent of his fiduciary status, if any is ultimately proven, will obviously depend on what his actual function was during the Class Period.

24

**III.   CONCLUSION**

For the foregoing reasons, this Court will dismiss Plaintiff's imprudent investment claims relating to the Former Plan.  The misrepresentation/non-disclosure claim will also be dismissed, as well as co-fiduciary claims against the Plan Committee Defendants premised upon a breach of the duty to monitor.  As to the remainder of the Complaint, the motion to dismiss will be denied.

An appropriate form of order will be filed together with this Opinion.


                                            s/ Stanley R. Chesler    
                                          STANLEY R. CHESLER
                                          United States District Judge


DATED: August 27, 2008